TEXAS & NEW ORLEANS RAILROAD
COMPANY, Plaintiff,

v.

CITY OF NEW ORLEANS by and
through The Public Belt Railroad Commission for the City of New Orleans,
Defendant.

Civ. A. No. 7188.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 5, 1958.

Chaffe, McCall, Phillips, Burke & Hopkins, Harry McCall, Sr., Harry McCall, Jr., New Orleans, La., for plaintiff.

Michel Provosty, Michel O. Provosty, New Orleans, La., for New Orleans Public Belt Railroad Commission.

John St. Paul, Jr., Sumter D. Marks, Jr., New Orleans, La., for Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans.

J. SKELLY WRIGHT, District Judge.

This diversity litigation requires the interpretation of one of a series of contracts concerning the financing of the construction and operation of the Huey P. Long Bridge over the Mississippi River just north of New Orleans. The owner and operator of the bridge is the City of New Orleans, acting through its Public Belt Railroad Commission, hereinafter referred to as "Belt." The users of the bridge are Belt, the Texas & New Orleans Railroad Company, hereinafter referred to as "TNO," and a group of railroads, hereinafter referred to as "Terminal," consisting of the Missouri Pacific Railroad Company, the Texas & Pacific Railway Company, and the Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans. TNO has filed its complaint against Belt, seeking a declaration that certain of its obligations under its original contract with Belt have terminated. Before the Court now for adjudication is a motion by Belt to dismiss for failure to join Terminal as an indispensable party, and a motion by Terminal [1] for leave to intervene as a defendant. One member of the Terminal group is, like Belt, a citizen of Louisiana, and another member is a citizen of Texas, as is TNO. Thus, if Terminal is indispensable either as plaintiff or defendant, the suit must be dismissed for lack of diversity of citizenship. By the same token, Terminal may intervene only if its interest in the suit is one for which independent jurisdictional grounds are unnecessary.

In 1932 the construction of the railroad section of the bridge was financed by selling to the Reconstruction Finance Corporation a $6,000,000 revenue bond issue. The funding of these bonds was provided for in an indenture signed by the City of New Orleans and a contract between Belt and TNO, hereinafter referred to as the "First Contract." Under this contract, TNO agreed to make fixed payments of $485,000 a year for the right to use the bridge. This figure did not represent the actual value of that right, but was the sum required annually to pay interest and principal on the 25-year bond issue. The First Contract provided alternative formulas for fixing the date, "User Date," on which these fixed payments should terminate, after which TNO would pay only its pro rata share of bridge expenses calculated on a user basis. The question presented on the

[1]. Actually, only Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans has moved to intervene. However, the interests of the railroads making up the terminal group are so interwoven, all or none should be allowed to intervene. Consequently, in deciding the motion to intervene as well as the motion to dismiss for failure to join an indispensable party, the citizenship of each member of the terminal group will be considered.

merits in this case is whether, according to either of these formulas, User Date has already arrived.

Belt and TNO were the only parties to the First Contract in which these formulas were established, and until 1942 they were the only users of the bridge. The First Contract provided that all the expenses of the bridge and the bonds should be borne initially by TNO and Belt, but it also contemplated that other railroads would use the bridge and share these expenses. In this event the original schedule of payments by TNO and Belt would not be altered, but, instead, the First Contract provided certain formulas and priorities whereby the revenues from other railroads would be used to refund to Belt and TNO a portion of past and current expenses.

In the First Contract, Belt also agreed not to contract with other railroads on terms more favorable than those which TNO had accepted. Thus, in 1940, when the Terminal Group appeared on the scene, Belt first signed an Amending Contract with TNO, in which TNO assented to the terms of a contract, hereinafter called the "Second Contract," which was to be signed by Belt and Terminal. The Amending Contract also amended and amplified the refund provisions of the First Contract, spelling out the manner in which Terminal's payments would be applied after User Date. The order in which refunds would be paid to Belt and TNO was specified, and a new formula was provided for calculating the amount of refunds which would still be due Belt on User Date. In the Second Contract, signed by Belt and Terminal later in 1940, Terminal agreed to make fixed payments to Belt of $100,000 a year for the first seven years and of $150,000 a year thereafter, until all the refunds provided for in the First Contract and the Amending Contract should be paid to Belt and TNO.

In this manner, Terminal, in its separate contract, adopted the arrangements made in the earlier contracts between Belt and TNO and, in effect, made itself the guarantor or insurer of any refunds still unpaid on User Date. Terminal's contractual obligations, however, ran solely to Belt.

In April, 1957, the last of the bonds were paid; the Indenture was satisfied and the trustee discharged. Since then TNO has continued to make fixed payments, but it contends that User Date arrived at the latest in July, 1957, and that payments made thereafter should be returned by Belt. TNO's fixed payments, which formerly were paid to the trustee and applied to interest and principal on the bonds, have since April, 1957, been retained by Belt. If these last payments were in fact owed to Belt because User Date had not yet arrived, then, according to the formula in the Amending Contract, they, or a portion of them, will be credited against refunds owing to Belt. Each succeeding payment by TNO until User Date will now reduce the amount of refunds to be paid by Terminal after User Date. Conversely, if Belt is required to return these last payments to TNO, Terminal's liability under its own contract will be increased.

Rule 19(a), F.R.Civ.P., 28 U. S.C.A., on which Belt relies, makes a party indispensable only when its interest is "joint" with that of either the plaintiff or defendant. This rule has been interpreted as being merely declaratory of the existing law [2] which defined indispensable parties as "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, 17 How. 129, 139, 58 U.S. 129, 139, 15 L.Ed. 158.[3]

---

2. Chidester v. City of Newark, 3 Cir., 162 F.2d 598, 600.

3. The Fifth Circuit has outlined the principles applicable to indispensable parties.

Basically, the doctrine of indispensable parties is an equitable one. The fact that an absent party may not be legally bound by the judgment does not necessarily make such persons dispensable. Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971, 973. But if the merits of a case may be determined without prejudice to the rights of absent persons, "a court of equity will strain hard to reach that result." Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 70, 57 S.Ct. 51, 53, 81 L.Ed. 42. In Hudson v. Newell, supra, and Mackintosh v. Marks' Estate, 225 F.2d 211, the Fifth Circuit indicated the extent to which a court should go in administering justice between the parties who are before the court in spite of the interest in the litigation of absent parties.

 In the case at bar, Terminal is not an indispensable party. The obligations sought to be declared herein arise out of a contract to which Terminal was not a party and in which Terminal has no rights, joint or otherwise. On the issues now in suit, TNO could not have joined Terminal as a defendant. Any decree now rendered between Belt and TNO could not, by itself, bind Terminal. Whether or not Terminal has agreed to be bound is a question arising out of another contract which is not the subject of the present suit. Under these circumstances, Terminal is not indispensable. Samuel Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 113 F.2d 703.

 Belt attempts to avoid this conclusion by asserting that the contracts were not separate but were bound together into a single agreement. The only basis for this claim is the following clause from the Amending Contract:

> "Company (TNO) agrees that notwithstanding the provisions of Section 8 of the First * * * Contract * * * Public Belt may * * * enter into those certain two proposed contracts with (Terminal) * * * drafts whereof are annexed hereto and made part hereof as fully as if set forth at length herein; and to the extent of permitting Public Belt so to do, the First * * * Contract * * * shall be and hereby (is) amended."

By a similar clause, the First Contract and Amending Contract are incorporated in the Second Contract. Belt contends that these provisions made Terminal a party, and an indispensable one, to the First Contract and to the present dispute. But the phrase, "made part hereof as fully as if set forth at length herein," is nothing more than a standard contract formula for incorporation by reference. It cannot make parties to a written contract persons who are not signatories thereof. Moreover, the strange interpretation contended for by Belt is expressly contradicted by a later clause appearing in both contracts:

> "It is understood that wherever in this agreement * * * any provision of or from any document is incorporated by reference, such incorporation is solely for purpose of convenience, and (TNO, or Terminal) shall not be prejudiced, by virtue of such incorporation, by any interpretation of any such provision

They are: "(1) Where federal jurisdiction rests on diversity of citizenship the diversity must be complete, and to see whether it is, all parties will be aligned as plaintiffs or defendants according to their real interests; (2) A court cannot adjudicate the rights of persons who are not parties before it; they will be brought in if possible and if they will not destroy diversity. (3) If diversity will be thereby destroyed the court will not require them to be brought in, but will enquire if there is any relief it can properly give without them; if there is, it will give it without prejudice to the rights of the absent; if none can be given the suit will be dismissed. In the latter event the dismissal is not for want of federal jurisdiction, but for lack of indispensable parties. See Federal Rules of Civil Procedure No. 19, 28 U.S.C.A." Hudson v. Newell, 5 Cir., 172 F.2d 848, 850.

if it has not been a party to the making of such interpretation."

Inasmuch as TNO is not to be deprived of its right to have its case tried in the federal courts, it would be convenient to have Terminal made a party to this determination of the common issue of User Date. Belt might have achieved this result by impleading Terminal. This case falls squarely within the terms of Rule 14(a), F.R.Civ.P., in that Terminal "is or may be liable" to Belt for all or part of the sums which TNO is seeking to recover. The issue between Terminal and Belt may be regarded as ancillary to the main dispute, and may be presented to this Court without independent jurisdictional grounds. Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L. Ed. 888; Lenz v. Wagner, 5 Cir., 240 F.2d 666; Glens Falls Indemnity Company v. United States, 9 Cir., 229 F.2d 370, 373–374. Compare Drumright v. Texas Sugarland Co., 5 Cir., 16 F.2d 657, and Cochrane v. W. F. Potts Son & Co., 5 Cir., 47 F.2d 1026. See also 3 Moore, Federal Practice § 14.26 (2d Ed. 1948); 4 Moore, Federal Practice § 24.18(3) (2d Ed. 1950); I Barron and Holtzoff, Federal Practice and Procedure § 424; Developments in the Law—Multiparty Litigation, 71 Harv.L.Rev. 911. Instead of impleading Terminal, however, Belt has vainly insisted on dismissal of the entire cause in favor of a state court proceeding filed by it subsequent to the institution by TNO of the present one.

Terminal has decided to protect its own interests by filing a motion to intervene pursuant to Rule 24(a) (2), F.R.Civ.P., which provides for intervention as of right "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action." The subject matter of the principal dispute is TNO's obligation to make fixed payments for the use of the bridge, which payments will reduce the amount of Terminal's liability. Belt's obligation to Terminal in this matter was defined as follows in the Second Contract:

"Public Belt agrees that subject to the orders of any court of competent jurisdiction * * * it will endeavor to collect from all parties desiring to use the railroad section of said bridge * * * the same reasonable charges for the use of the bridge * * * in order that Terminal's payments to Public Belt of the amounts provided for in Section 6 hereof may cease and terminate as soon as possible pursuant to Section 7 hereof."

A decree in the present case fixing the amount of TNO's liability for bridge charges would be an "order of a court of competent jurisdiction" which, by virtue of the agreement quoted above, would fully satisfy Belt's obligation to Terminal in the premises. Although the decree would not name, it would, in effect, bind Terminal. At present, both Belt and Terminal are opposing TNO's claims regarding User Date, but their interests are far from identical and may be adverse in some respects. It is the opinion of this Court that Terminal's interests may not be adequately represented by Belt, and, consequently, all of the members of the Terminal group must be allowed to intervene without regard to their citizenship. Phelps v. Oaks, supra; Lenz v. Wagner, supra. See also 4 Moore, Federal Practice § 24.18.

Belt has also suggested that the Southern Pacific Company, which signed the First Contract as guarantor of the obligations of TNO, is also an indispensable party to this suit. The Southern Pacific Company bound itself "jointly, severally and in solido" with TNO. An earlier case in this circuit, dealing with another phase of these same contracts, settled this question by holding that parties which bind themselves severally may be sued separately. Texas & P. Ry. Co. v. City of New Orleans, 5 Cir., 159 F.2d 77.

The motion to dismiss is denied. The motion to intervene is granted.