**UNITED STATES of America, Plaintiff-Appellee,**

v.

**SABINE SHELL, INC. and Badon Construction Co., Defendants-Appellants.**

**No. 81–3368**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

April 30, 1982.

Karl E. Boellert, Lake Charles, La., for defendants-appellants.

D. H. Perkins, Jr., Frances O. Allen, Asst. U. S. Attys., Shreveport, La., for plaintiff-appellee.

Before RUBIN, SAM D. JOHNSON and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Two of the parties to a consent decree with the Government seek to avoid enforcement of a provision in that decree requiring them to restore, in accordance with the Government's plan, marshland that they have altered. Alternatively, they seek approval of their own plan on the basis that it is a better one, and they also seek discovery of the Government's files to enable them to establish that their plan is better. The district court rejected these attempts to escape the consequences of the decree and enforced it. We affirm.

I

The United States brought an action against Sabine Shell, Inc. ("Shell") and the contractor it employed, Badon Construction Co. ("Badon"), under 33 U.S.C. §§ 403, 1311, and 1319(d) (1976 & Supp. III 1979), seeking (1) an injunction prohibiting them from dredging, filling, and constructing levees in Sabine Lake and in adjoining marshland without the permit required for such activity; (2) an order compelling the restoration of these areas; and (3) civil penalties. Shell had obtained permission from John W. Mecom and Four M Properties, Ltd., to dredge a canal to an inland lake, to search there for shell deposits, and to deposit the spoil on the surface of the property owned by Mecom and Four M. Shell had engaged Badon to supply the labor and equipment for the task.

The parties later signed a proposed consent decree, which was signed by the district judge, and then, on May 4, 1976, filed in the district court. The decree required Shell and Badon either to obtain a permit for the work or to restore the surface area to its pristine condition. Shell and Badon would not be required to do any restoration until they had applied for a permit. If, however, the permit were denied, Shell and Badon would "in a timely and expeditious manner secure approval of a restoration plan from the Department of the Army."

Shell applied for a permit on May 10. Despite the Government's insistence on expedition as a term of the consent decree, the Department of the Army did not act on the application until seventeen months later, when, in October 1977, it denied the application. Meanwhile, according to an affidavit submitted by Shell and Badon, in December 1976 Mecom and Four M conveyed title to this property to The John W. Mecom Company, a Texas corporation. In fashion almost as dilatory as the Army's, Shell took nine months to submit a restoration plan, filing it both with the Army and the Clerk of Court in August 1978. The beat then began to quicken, but not precipitately, for the Government waited only seven months, until February 7, 1979, to file its opposition to that plan in the record and suggest a plan of its own. On February 15, Shell and Badon filed a motion to stay submission and execution of the Government's restoration plan. On May 28, 1981, after further court proceedings and attempts by the parties to reach an agreement on a restoration plan, the district court granted the Government's motion to enforce the May 1976 consent decree. Shell and Badon appealed.

II

Shell and Badon filed their motion to stay the submission and execution of the Government's restoration plan on the grounds, *inter alia*, that the Government's plan would require them to enter property owned by a third party, which they no longer had permission to do. They averred that, although the previous owners of this property had agreed to the initial work, the permits from the owners had expired. Moreover, as noted above, they offered evidence that these owners had since conveyed the title to this property to The John W. Mecom Company. To buttress their argument, Shell and Badon submitted an affidavit from an officer of that corporation stating that it has terminated Shell and Badon's right to enter its property and will refuse to permit any further activity on it.

This issue is presented in a different light on appeal. Shell and Badon now contend that the Government should have joined the property owners as indispensable parties under Fed.R.Civ.P. 19(a). They question whether the district court may order the licensee of former property owners to restore the surface of the property without joining the present owner as a party defendant.

Shell and Badon failed to present this neat procedural question to the district court. Their failure, however, does not bar us from considering it on appeal. *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980); *Kimball v. Florida Bar*, 537 F.2d 1305, 1307 (5th Cir. 1976); *Haby v. Stanolind Oil & Gas Co.*, 225 F.2d 723, 724 (5th Cir. 1955) (per curiam). Nevertheless, we conclude that their contention lacks merit. Equitable considerations govern the disposition of a litigant's argument that someone is an indispensable party. *Toney v. White*, 476 F.2d 203, 207 (5th Cir.), *modified and aff'd en banc on other grounds*, 488 F.2d 310 (5th Cir. 1973); *Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963); *Texas & N.O.R.R. v. City of New Orleans*, 22 F.R.D. 84, 87 (E.D.La.1958). The equitable considerations in this case go against Shell and Badon.

In the proceedings below, Shell and Badon never tried to join the property owners as parties. Moreover, in the pretrial order,[1] they stated: "There are no claims of other parties." When they proposed the consent

_____

1. Which is dated February 19, 1976.

decree, it was apparent that any restoration would require reentry to the property and would affect its surface;[2] yet they did not raise the "absent property owners" issue in any way until three years later, when they filed their motion to stay submission and execution of the Government's restoration plan. Furthermore, the property owners themselves, patently aware of this litigation, never intervened either at the district or appellate court level. Presumably the property owners do not believe that the disposition of this suit will "impair or impede" their ability to protect their interests. Fed.R.Civ.P. 19(a)(2)(i).

Finally, Shell and Badon's failure to raise the issue of joinder until this appeal militates against a finding in their favor. *Geisser v. United States*, 513 F.2d 862, 872 (5th Cir. 1975).[3] If, as they now assert, they are in a dilemma,[4] it is one of their own making, one that they could have avoided by joining the property owners earlier in this litigation, or perhaps by treating the alleged reentry problem in their contract with the property owners.[5]

### III

■ The consent decree provides: "In the event the permit application is denied, the Defendants shall in a timely and expeditious manner secure approval of a restoration plan from the Department of [the] Army." After the permit application was denied, Shell and Badon submitted a plan that was not acceptable to the Army. The Army then prepared its own restoration plan, which it submitted to Shell and Badon. Shell and Badon argue that they are entitled to an evidentiary hearing on the manner and the extent of the restoration to be performed in the affected area, and that the Army's plan cannot be forced on them until such a hearing has been held.

This argument is not persuasive. Shell and Badon rely on cases[6] in which the aggrieved parties objected to restoration plans that were imposed on them by court orders entered after those parties were found to have violated the law. In this case, however, the court is not imposing a plan on Shell and Badon. It is requiring them to comply with a plan arrived at pursuant to the consent decree they entered into with the Army. By signing the decree, Shell and Badon agreed to comply with a "restoration plan approved by the Department of the Army." They thereby waived their right to a hearing on the particular merits of the "approved" plan. *See, e.g., United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256, 262–63 (1971). They may, therefore, object to the plan only on the grounds that, in devising it, the Army acted arbitrarily or capriciously. 5 U.S.C. § 706(2).

Shell and Badon do not contend, and the record does not suggest, that the Army has

---

**2.** Indeed, in their brief, Shell and Badon state: "The basic issue before the Court is not *whether* [Shell and Badon] may be compelled to restore the surface of the wetlands it had dredged and filled in search for commercial shell deposits. Rather, the issue is *how* the restoration should be executed in due regard for the ecological, practical, and equitable criteria which must be applied." (Emphasis in original.)

**3.** *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–110, 88 S.Ct. 733, 737–38, 19 L.Ed.2d 936, 944–45 (1968); *GTE Sylvania, Inc. v. Consumer Prod. Safety Comm'n*, 598 F.2d 790, 798 (3d Cir. 1979), aff'd, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Continental Ins. Co. v. Cotten*, 427 F.2d 48, 51 (9th Cir. 1970).

**4.** Their assertion, moreover, is open to doubt. The property owners' original permit was never entered into the record, and there is no proof,

save by an ex parte affidavit, of its termination. Furthermore, the Government argues that it has the authority to enter the property and do everything the restoration plan requires. Thus, according to the Government, Shell and Badon would not be liable if they entered the property, because they would in effect be acting as the Government's agents, doing exactly what the Government itself could have done. Shell and Badon never address this argument.

**5.** *See generally Foster v. Atlantic Ref. Co.*, 329 F.2d 485, 489 (5th Cir. 1964); 1 F. Harper & F. James, The Law of Torts § 1.11 (1956).

**6.** *Weiszmann v. District Eng'r, U. S. Army Corps of Eng'rs.*, 526 F.2d 1302 (5th Cir. 1976); *United States v. Sexton Cove Estates, Inc.*, 526 F.2d 1293 (5th Cir. 1976); *United States v. Weisman*, 489 F.Supp. 1331 (M.D.Fla.1980).

acted either arbitrarily or capriciously. The record shows, and Shell and Badon note in their brief, that for about two years the Army consulted with them and "made an effort to achieve a compromise on the restoration issue." Shell and Badon apparently are complaining, in essence, only that the Army's restoration plan is inferior to theirs.[7] Such a complaint, however, cannot justify our ordering a hearing and setting aside the judgment enforcing the Army's plan. Furthermore, having no right to a hearing, Shell and Badon also have no right to discovery of the Government's files.

Accordingly, the district court's judgment enforcing the consent decree is AFFIRMED.

---

**7.** For example, during the proceedings in the district court, Shell and Badon argued: "It is absolutely essential that *the best method* for the protection of the [property] be found. That can only be accomplished through an adver-sary, evidentiary hearing." (Emphasis added.) And in their brief in this appeal, Shell and Badon stress the need for a hearing to determine "the relative merits" of their plan and the Army's plan.