BOUDIN, Circuit Judge.
 

 This appeal is taken from a decision of the United States District Court for the District of Puerto Rico reversing a decision of the federal bankruptcy court. In substance, the district court sustained a claim by Crefisa, Inc., requiring the bankruptcy trustee of Colonial Mortgage Bankers Corporation (“Colonial”) to pay over approximately $557,000 comprising security for a note held by Crefisa. The background events are somewhat complicated.
 

 In the 1980s, Colonial was engaged in the business of servicing mortgages. One of its clients was the Bowery Savings Bank (“Bowery”) (Washington Mutual Bank has now been substituted for Bowery but it simplifies matters to refer only to Bowery). By agreement, Colonial collected mortgage payments due to Bowery and deposited them into Colonial accounts — in trust for Bowery — in two different Puerto Rico banks: Financiero and Banco Santan-der. The president of Colonial was Milton J. Rúa.
 

 In 1980, Rúa began a set of transactions that led to the present case by requesting a $500,000 loan from Caguas Central Federal Savings Bank (“Caguas”), a bank with which Colonial, Rúa, or both had had past dealings. The loan to Rúa, which may have been irregular, involved Rúa’s execution on November 26, 1986, of a promissory note due on demand for $500,000 in favor of Caguas. On November 28, 1986, the loan was completed through the following transactions:
 

 Caguas made a $500,000 deposit repre'senting the loan into Rúa’s personal checking account in the bank;
 

 Rúa opened a new savings account at the bank called a Golden Passbook account with a $500,000 check drawn on his checking account;
 

 Rúa made a written pledge of the Golden Passbook account as collateral to secure his $500,000 promissory note and any other current or future debts to Caguas.
 

 The Golden Passbook account — the treasure trove in this case — was opened as a personal savings account of Rúa, but the passbook bore the legend “Colonial Mortgage Bank, B.S.B., Corp.” (the “B.S.B.” apparently standing for Bowery Savings Bank). Bowery auditors were later told that the account held funds in Colonial’s name belonging to Bowery. There is some indication that Rfia later sought to transfer ownership of the Golden Passbook account to Colonial, but that Caguas rejected this effort on the ground that it did not maintain savings accounts for corporations.
 

 In December 1987, Colonial filed for bankruptcy giving rise to the present case. Puerto Rico financial authorities later concluded that Colonial and Rúa had diverted millions of dollars from trust accounts that Colonial had managed and had channeled the money into accounts at the Caguas bank where the funds were expended for the benefit of Colonial and Rúa. In all events, in the same month as the Colonial bankruptcy, Bowery brought suit in the district court seeking to recover from Colonial, Caguas, Rúa and Rúa’s wife about $1,000,000 in diverted Bowery funds.
 
 Bowery Savings Bank v. Colonial Mortgage Bankers Corp.,
 
 87-874-RLA (D.P.R.).
 

 
 *48
 
 In April 1988, the bankruptcy court entered an order at the behest of Colonial’s bankruptcy trustee, Hans Lopez-Stubbe, requiring Caguas to turn over the funds in the Golden Passbook account to the trustee.
 
 [1]
 
 The trustee’s theory, it appears, was that the funds, being held in the Golden Passbook account with a passbook bearing Colonial’s name, properly belonged to Colonial’s estate. In November 1989, Caguas paid over to the trustee approximately $557,000 pursuant to the bankruptcy court order, the amount representing the original principal of $500,000 plus accumulated interest.
 

 In 1990, Caguas failed, and the Resolution Trust Corporation (“RTC”) was appointed, initially as conservator for Caguas and later as its receiver. Thereafter, the RTC on December 21, 1990, endorsed Rúa’s promissory note in favor of Caguas to Banco Santander. The note was later re-endorsed by Banco Santander to Crefi-sa, which is apparently a wholly owned subsidiary of Banco Santander. The endorsement was part of a multi-million dollar sale of Caguas’ assets by the RTC to Banco Santander pursuant to a purchase and sale agreement. But the question whether the terms of the purchase and sale agreement are properly considered in this case is one of the contested issues on this appeal.
 

 On October 6, 1991, Crefisa brought an adversary proceeding in the Colonial bankruptcy case asserting a security interest in the Golden Passbook account; the claim was based on the pledge of the Golden Passbook account that Rúa had made to Caguas on November 28, 1986, to secure his promissory note. Since the funds in the Golden Passbook account had been turned over to the trustee pursuant to the bankruptcy court’s earlier order, the relief sought by Crefisa was an order from the bankruptcy court requiring the trustee to transfer the proceeds to Crefisa.
 

 The bankruptcy trustee, supported by Bowery, opposed Crefisa’s request that the funds derived from the Golden Passbook account be transferred to Crefisa and filed a discovery request to identify the basis for Crefisa’s claim to a security interest in the account. In April 1994, Crefisa produced Rúa’s promissory note to Caguas, whose markings showed that it had been endorsed successively by the RTC to Ban-co Santander and by Banco Santander to Crefisa. The trustee then moved to dismiss Crefisa’s adversary proceeding or for summary judgment; he asserted that Cre-fisa had not established any interest in the Golden Passbook account since the promissory note made no reference to any security and Crefisa had provided no other evidence to support its claim to the security.
 

 After additional filings but no further pertinent evidence from Crefisa, the bankruptcy court on January 25, 1995, issued a decision in favor of the trustee and dismissed Crefisa’s complaint. In a nutshell, the bankruptcy court ruled that the promissory note’s transfer was governed by Puerto Rico’s Negotiable Instruments Law,
 
 [2]
 
 which did not provide for automatic transfer of the security for an assigned note, rather than by the Civil Code, P.R. Laws Ann. tit. 31, § 1
 
 et seq.;
 
 and even if the Civil Code were applicable to the transfer, its requirements for an automatic transfer of a security interest had not been met as to third parties,
 
 see
 
 P.R. Laws Ann. tit. 31, § 3941. Since the promissory note made no mention of security, Crefisa had not shown that it had obtained Caguas’ security interest in the account. The bankruptcy court entered judgment
 
 *49
 
 against Crefísa, and Crefísa appealed to the district court on March 3,1995.
 

 Three days later, on March 6, 1995, Crefisa filed a motion in the bankruptcy court to amend the judgment, tendering portions of the purchase and sale agreement dated December 21, 1990, between the RTC and Banco Santander for the sale of the Caguas assets to Banco Santander. The bankruptcy judge later denied the motion on the ground that it lacked jurisdiction because of the then-pending Crefisa appeal to the district court. The trustee also moved in the district court to strike the agreement from the record on appeal, but in various orders in the spring of 1996, the district court denied the motion to strike and asked Crefisa to submit a complete copy of the purchase and sale document. Crefisa filings in June 1996 and November 1996 purported to comply with this request and to add further information about the RTC-Banco Santander transaction.
 

 In July 1996, the trustee and Bowery moved to “dismiss the appeal” to the district court, essentially arguing the merits of the appeal and defending the bankruptcy court’s decision. On August 27, 1996, Crefísa opposed the motion but also argued the merits, urging that the bankruptcy judge had erred. On September 14, 1998, the district court released a decision and judgment reversing the bankruptcy court and determining that Crefisa was entitled to claim a security interest in the Golden Passbook account.
 

 In its decision, the district court found that the purchase and sale agreement between RTC and Banco Santander confirmed the intent of the parties to effect a transfer of the security interest. Alternatively, the court ruled that Caguas’ security interest in the Golden Passbook account had been transferred by operation of law under the Civil Code by virtue of transfer of Rúa’s promissory note from Caguas, through the RTC and Banco Santander, to Crefísa; in the court’s view the Negotiable Instruments Law governed the transfer of the note and the Civil Code provided for an automatic transfer of the security interest.
 

 The trustee and Bowery now appeal, asking that we reinstate the bankruptcy court’s ruling dismissing Crefisa’s complaint. Their first argument is that as a procedural matter, the district court had no business considering the purchase and sale agreement because it had not been offered in evidence in the bankruptcy court; and their second argument is that the district court’s alternative reliance on the Civil Code to effect an automatic transfer of the security misreads the substantive law. (A third argument merely repeats fragments of the first two.)
 

 On the procedural issue, we sympathize with the district court’s desire to know the full story of the transfer but agree with the trustee that the district court was not entitled to consider the purchase and sale agreement. In an appeal from the bankruptcy court, the district court sits in an appellate capacity, Fed. R. Bankr.P. 8001; and, just as a circuit court is limited to the district court record, 16A Wright, Miller
 
 &
 
 Cooper,
 
 Federal Practice and Procedure
 
 § 3956.2, at 337 (3d ed.1999), so the district court is normally limited to the evidentiary record compiled in the bankruptcy court,
 
 Crawford v. Lamantia,
 
 34 F.3d 28, 31 (1st Cir.),
 
 cert. denied,
 
 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995);
 
 In re Armorflite Precision, Inc.,
 
 48 B.R. 994, 997 (D.Me.1985).
 

 In rejecting the trustee’s motion to strike, the district court said in substance that the purchase and sale agreement was material to the dispute. This is at least arguably so. But when a party that has favorable evidence fails to proffer it before the trial court decides a matter, the fact that the evidence would have been material if offered does not mean that it can be considered on the appeal. The reason is obvious: the procedures used on appellate review are not designed to vet new evi
 
 *50
 
 dence or allow an effective evidentiary response to it.
 

 When the bankruptcy judge decided the trustee’s motion to dismiss or for summary judgment, the purchase and sale agreement was not considered because Crefisa failed to submit it in opposition to the trustee’s motion. On review, the question for the district court was whether the bankruptcy judge reached the right decision on the record made by the parties. Crefisa is mistaken in arguing that the district court was entitled to consider the purchase and sale agreement as evidence of the transfer of the security interest simply because the agreement was physically annexed to Crefisa’s later motion to amend the judgment.
 
 See Kirshner v. Uniden Corp.,
 
 842 F.2d 1074, 1077 (9th Cir.1988).
 

 Of course, Crefisa could have sought review in the district court of the bankruptcy judge’s post-decision refusal to enlarge the record. For that purpose, the agreement would be available to the district court, like an offer of proof, for the purpose of determining whether that refusal was error (but only for that purpose). However, Crefisa makes no claim in this court that the bankruptcy judge erred in denying the post-decision motion to amend the judgment and there is no indication that that denial was even appealed to the district court.
 

 Limiting the evidence to that properly before the trier of fact is not some ritual or formality. If Crefisa had offered the agreement in the bankruptcy court in timely fashion, the trustee would have been entitled to dispute the validity or significance of the agreement or offer counter-evidence of his own. The trustee lists for us some of his objections to the agreement, saying
 
 inter alia
 
 that the document was incomplete, lacked a signature page, is only an agreement for a future transaction, and — being between RTC and Banco Santander — does not transfer anything to Crefisa. But a party objecting to evidence newly tendered on appeal is not obliged to show unfair prejudice: the point is that new evidence, which could have been offered in the trial court, is not supposed to be proffered for the first time in an appellate setting.
 

 There are qualifications to every general rule.
 
 See
 
 16A Wright, Miller & Cooper,
 
 supra,
 
 § 3956.4, at 349-50. Occasions exist on which appellate panels do need to consider facts not before the trial court
 
 {e.g.,
 
 on claims of mootness), and procedures exist for reopening judgments to consider newly discovered evidence. Fed. R.Civ.P. 60(b)(2). But Crefisa has pointed us to no excéption or extraordinary circumstance that might embrace the purchase and sale document submitted in this case — a document that ought to have been known to Crefisa from the outset and whose completeness and significance are open to substantial questions.
 

 This brings us to the trustee’s attack on the district court’s alternative ground for its decision, namely, the court’s ruling that even apart from the agreement, the admitted endorsement of the note by the RTC to Banco Santander and then by it to Crefisa carried the security interest with it by operation of law. It is common ground that the Negotiable Instruments Law, which provides for the transfer of the note merely by endorsement, says nothing about the transfer of security interests. The bankruptcy judge took the view that Crefisa could not “pick and choose,” using the Negotiable Instruments Law to effect the assignment of the note and the Civil Code to transfer the security.
 

 But we read the Negotiable Instruments Law as inviting supplementation wherever it is itself silent:
 
 “In any
 
 case
 
 not
 
 provided for in this title [the Negotiable Instruments Law] the rules of the Law Merchant, Civil Law and Equity shall govern.” P.R. Laws Ann. tit. 19, § 386;
 
 see also
 
 P.R. Laws Ann. tit. 31, § 12. Only if there is a conflict with respect to a negotiable instrument does “this title” automatically prevail.
 
 E.g., Paris v. Canety,
 
 73 P.R.R.
 
 *51
 
 386, 388 (1952). And nothing in the Negotiable Instruments Law forbids a transfer of a security interest incident to the endorsement of a note.
 

 The next question, then, is whether Puerto Rico law does provide that the assignment of a debt transfers a security interest in property pledged to secure the debt. Crefísa relies directly on the Civil Code provision, codified at P.R. Laws Ann. tit. 31, § 3943, which says that “[t]he sale or assignment of a credit [ie., the right to collect a debt] includes that of all the accessory rights, such as the security, mortgage, pledge, or privilege.” The district judge took section 3943 as providing an alternative ground for upholding Crefí-sa’s right to the security interest at issue in this case.
 

 It appears to be true that section 3943, in providing for automatic transfer of security interests, has been treated without much discussion as applying to negotiable notes.
 
 Credito y Ahorro Ponceno v. Gorbia,
 
 25 F.2d 817 (1st Cir.1928);
 
 Caguas Co., Inc. v. Lopez,
 
 59 P.R.R. 263, 271 (1941). However, the same subdivision of the Civil Code containing section 3943 also contains a companion provision, which reads: “The assignment of a credit, right, or action shall produce no effect against a third person but from the time the date is considered fixed, in accordance with sections 3273 and 3282 of this title.” P.R. Laws Ann. tit. 31, § 3941.
 

 Sections 3273 and 3282 are primarily evidence provisions somewhat awkwardly adopted by section 3941 for substantive purposes. One deals with proof of public instruments and the other with proof of private instruments. Public instruments are primarily those that have been notarized, P.R. Laws Ann. tit. 31, § 3271, and there is no indication in this record that the note was transferred by a notarized document. Accordingly, the endorsed note in this case appears to qualify (at best) as a private instrument, as to which section 3282 provides in pertinent part:
 

 The date of a private instrument shall be considered, with regard to third persons, only from the date on which it may have been filed or entered in a public registry, from the death of any of those who signed it, or from the date on which it may have been delivered to a public official by virtue of his office.
 

 Thus, coupling sections 3941 and 3282 together, the language of the two provisions indicates that the transfer of “the credit” embodied in the promissory note could have “no effect” under the Civil Code against a third party until some document evidencing the assignment of the debt was filed in a public registry or delivered to a public official. So far as the record shows, this has never occurred. And if the assignment of the debt is not effective against a third party so far as the Civil Code is concerned, it is hard to see how an automatic transfer of a security interest incident to the transfer of the debt can be effective under the Civil Code against a third party.
 

 The district court recognized the objection based on sections 3273, 3282, and 3941 but said that these sections dealt with the effect of the assignments of credits “against a third party,” and had no “applicability” in this case. But the trustee
 
 is
 
 formally a third party vis á vis the assignment of the note and/or security interest, and section 3941 is manifestly a limitation on section 3943.
 
 [3]
 
 While the transfer of the note remains valid under the Negotiable Instruments Law regardless of section 3282, it is hard to see how the transfer of a security interest under section 3943 can be given effect based on an assignment of a debt that is not allowed under section 3941 to affect a third person unless and until the assignment is registered. If there is
 
 *52
 
 an answer to this objection, neither the district court nor Crefisa has supplied it.
 

 There is a
 
 possible
 
 answer. It is fairly easy to guess why section 3941 was framed: without notice of a transfer, a third party could easily be prejudiced by the private transfer of a debt or by the automatic transfer of an ancillary security interest designed to secure a debt. Seemingly, section 3941 is designed to secure such notice, at least constructively, by a requirement of public filing of the assignment. Of course, a negotiable instrument is designed to be transferred without notice to third parties, and such a transfer is valid
 
 as to the instrument
 
 without regard to section 3941’s requirement; but the transfer of a security interest, not mentioned in the note, presents the same danger as the transfer of any property other than a negotiable instrument.
 

 One might reasonably argue that even if the language of section 3941 supports the trustee, its rationale does not apply to him in this instance. After all, the trustee did not take any action (except for litigation expenses) in reliance on Caguas’ “ownership” of the security interest. This is far from a case in which the trustee
 
 purchased
 
 an object from a prior owner only to be faced with a claim that the owner had previously made a secret assignment or sale to another. Thus, one could argue that the trustee should not be able to invoke section 3941 even though literally read it appears to shield him from the effect of section 3943.
 

 This policy argument has not been made by Crefisa and it may or may not be valid. Sometimes statutes are read in accordance with their rationale even in the teeth of statutory language, but other times they do enact
 
 rules
 
 not perfectly fitted to their rationale.
 
 See Level 3 Communications, Inc. v. Federal Ins. Co.,
 
 168 F.3d 956, 958 (7th Cir.1999) (Posner, C.J.). Puerto Rico precedent in this case is at best obscure.
 
 Cf. Hernandez v. Iglesias,
 
 58 P.R.R. 406 (1941). And needless to say, we have not had the benefit of any re-search by the parties on this issue. Crefi-sa has forfeited the policy argument by failing to make it.
 
 Executive Leasing Corp. v. Banco Popular,
 
 48 F.3d 66, 67-68 & n. 3 (1st Cir.1995).
 

 About the best we can say in this instance is that we find the policy argument plausible but not compelling. In these circumstances, we are not going to rescue the district court’s judgment on a ground that was not argued to us and may or may not be correct. We have mentioned this possible escape hatch only to be sure that our opinion is not taken to foreclose such an argument if made by the parties in a similar case in the future. Since the problem arises primarily from language in the Civil Code, the replacement of the Negotiable Instrument Law is no assurance against a recurrence of this issue.
 

 For the reasons stated, we conclude that on the record before it the bankruptcy court correctly dismissed Crefisa’s adversary petition and that the district court erred in reversing the bankruptcy court. Accordingly, the judgment of the district court is
 
 reversed.
 

 [1]
 

 . It is not clear whether the order required the payment of the funds to the trustee outright or whether, as other documents suggest, the funds were to be held
 
 in custodia iegis
 
 pending resolution of the claims made by the trustee, Caguas and Bowery.
 

 [2]
 

 . The Negotiable Instruments Law, P.R. Laws Ann. tit. 19, § 1
 
 et seq.,
 
 was later repealed,
 
 see
 
 P.R. Laws Ann. tit. 19, § 401 et seq., but the parties agree that its provisions are still in force as to this transaction.
 

 [3]
 

 . This is apparent if one juxtaposes the two sections since they then say in substance that the assignment of a debt "includes ... the security” but the assignment "shall produce no effect against a third person” except from the time that the debt is fixed under section 3273 or section 3282.