# United States Court of Appeals
## For the First Circuit

No. 00-1759
No. 00-1760

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

SAN JUAN BAY MARINA,
SHOOTERS WATERFRONT RESTAURANT,
AND EDUARDO FERRER

Defendants, Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Stahl and Lynch, Circuit Judges.

Eduardo A. Vera Ramírez, with whom Ramirez Lavandero, Landrón & Vera, L.L.P. was on brief, for appellant.

Camille Vélez-Rivé, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Miguel A. Fernández, Assistant United States Attorney, were on brief, for appellee.

February 21, 2001

**LYNCH, Circuit Judge**. The San Juan Bay Marina has a number of commercial establishments located on piers in San Juan Harbor, including the Shooters Waterfront Café. Lacking the necessary permits from the Army Corps of Engineers, the Marina nonetheless built new piers and structures. These new constructions are located in the San Antonio Channel, part of the navigable waters of the United States, and so are subject to the Rivers and Harbors Act, 33 U.S.C. § 403 et seq. The United States brought an action against the Marina, the restaurant, and Eduardo Ferrer, the President of both companies, to compel defendants to remove these structures, in order to restore the waterways, and for a permanent injunction against future illegal construction. The district court, on cross motions, entered summary judgment for the United States and issued the injunctive relief.

On appeal, the Marina primarily points to the fact that it leases the original piers from an entity of the government of Puerto Rico, the Puerto Rico Industrial Company ("PRIDCO"), and surrounding areas from the Puerto Rico Port Authority ("PREPA"). As such, it argues, the case should have been dismissed because the government of Puerto Rico was an indispensable party to the case. It also says that under the lease any "improvements" made to the original property return to PRIDCO and that the United States cannot proceed with this action

without ascertaining whether Puerto Rico would like to have these structures kept. In addition, it argues that the United States is required to consider the public interest in considering whether to grant a permit and has not done so. Finally, the Marina says there are genuine issues of material fact, precluding entry of summary judgment for the United States.

## I.

We describe the facts established by the record. After being denied an earlier permit application, the Marina applied to the Corps, in April of 1992, to build an 80 by 40 foot platform adjacent to -- and to become part of -- the original structure. On May 18, 1992, the Corps issued a contingent permit, No. 199250101, for the construction. A contingent permit does not allow construction to start until the permit conditions are met. The permit was contingent on obtaining coastal zone certification or waiver from the Puerto Rico Planning Board and Puerto Rico Environmental Quality Board. Neither a certification nor a waiver was obtained. Despite this, the defendants went ahead and built a platform. The platform was roughly 97 by 57 feet, larger than that proposed in the application. The Corps issued a cease and desist order on July 5, 1995, after it had inspected the site.

In May of 1992, the Marina had filed for Nationwide Permit Number 3, to reconstruct an existing pier. This type of permit

authorizes the reconstruction and rehabilitation of existing serviceable structures but does not permit deviation from the original footprint. See 33 C.F.R. § 330 et seq. (nationwide permit program). The Marina then converted the pier from a wooden structure to a reinforced concrete structure with additional piles. The problem is that the pier was also constructed to twice its original size, in violation of the permit conditions.

The Marina filed, on August 4, 1993, another permit application, No. 199350118, to construct a 40 by 44 foot expansion to the contingently authorized 80 by 40 foot platform. The Corps again issued a contingent permit, conditioned on receiving coastal zone certification from the Planning Board. On December 29, 1993, the Commonwealth denied approval. Indeed the Planning Board strongly objected to the proposed project. In February 1994, the permit was denied by the Corps. Defendants took no appeal from the permit denial. Nonetheless, defendants went ahead and constructed an addition of approximately 40 feet by 57 feet. The net result of the construction was the emergence of a continuous structure of roughly 137 by 57 feet, which houses a terrace bar, a swimming pool, a deck, and ticket offices for a tour boat.

Without any permit application at all defendants also added another structure, rhomboid in shape, of about 2800 square feet, for a "sushi bar." Indeed, the construction started after the Corps had

-4-

issued its July 1995 cease and desist order to stop the other unauthorized work. The defendants also went ahead and built yet another pier, about 300 feet long by 5 feet wide, without a permit. The Corps issued an amended cease and desist order in September 1995 to take account of these later two violations.

On November 30, 1995, defendants filed another permit application, after the fact, to justify all of the unauthorized structures. Not surprisingly, the Corps denied the application, saying it could not accept an after-the-fact permit from someone who had been denied a permit and who would be subject to legal action. This suit was then brought.

## II.

Our review of the entry of summary judgment is de novo. Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000). We review an award of injunctive relief ordering removal and restoration for abuse of discretion. United States v. Cumberland Farms of Conn., Inc., 826 F.2d 1151, 1164 (1st Cir. 1987), cert. denied, 484 U.S. 1061 (1988). A district court's determination that a party is not an indispensable party can rest on a determination under either Rule 19(a) or Rule 19(b) of the Federal Rules of Civil Procedure. We have previously found it unnecessary to determine whether the appropriate standard of review for Rule 19(a) decisions as to necessary joinder is de novo or for abuse of

discretion.  See Tell v. Trustees of Dartmouth Coll., 145 F.3d 417,
418-19 (1st Cir. 1998) (noting circuit split).  Since the outcome again
would be the same under either standard, we refrain from resolving this
question.  See id. at 418 (not resolving issue because not relevant to
outcome).  Rule 19(b) determinations as to indispensable parties are
reviewed for abuse of discretion in this circuit.  See Travelers Indem.
Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989).

This case is set in the legal framework of the Rivers and
Harbors Act of 1899, 33 U.S.C. § 401.  For more than a century, it has
been the law that no one may place obstructions into the navigable
waters of this country without authorization from the Army Corps of
Engineers.  See United States v. Kennebec Log Driving Co., 491 F.2d
562, 565 (1st Cir. 1973); see also United States v. Estate of Luis
Boothby, 16 F.3d 19, 21 (1st Cir. 1994).  The term "obstruction" as
used in this Act has a broad sweep.  See Sanitary Dist. Co. of Chicago
v. United States, 266 U.S. 405, 429 (1925) (terming the section "a
broad expression of policy in unmistakable terms"), citing United
States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 708 (1899)
(giving the concept of obstruction in the predecessor act a broad
sweep; not limiting it to "a prohibition of any obstruction to [ ]
navigation," but instead construing the section to reach "any
obstruction to the navigable capacity, and anything, wherever done or
however done, . . . which tends to destroy the navigable capacity of

-6-

one of the navigable waters of the United States"); see also United States v. Republic Steel Corp., 362 U.S. 482, 487-88 (1960) (noting "broad sweep" given to the term).  The term has been construed to include even the deposit of certain refuse and waste materials, which violators may be ordered to remove.  See id. at 485, 491-92 (district court had authority under the River and Harbor Act to issue injunctive restorative orders).

The key provision of the Act, for our purposes, is § 403:

The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United Sates, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

33 U.S.C. § 403.  Where navigable coastal waters, such as the San Antonio channel, are involved, the Corps requires that Coastal Zone Management Act certification be acquired.  See 33 C.F.R. § 320.4(h). The Coastal Zone Management Act is a federal law administered by the National Oceanographic and Atmospheric Administration, which, in turn,

has delegated some authority for administration to the States. See 16 U.S.C. § 1451 et seq. Puerto Rico is considered a state for these purposes, and administers the Act through the Puerto Rico Planning Board.

The record is clear that defendants built structures without necessary permits. Defendants attempt to avoid the removal, restoration, and cease and desist orders on other grounds. In opposition to the motion of the United States for summary judgment, defendants made four arguments: (1) the Government of Puerto Rico was an indispensable party because it had a vested interest in the property and owned the premises defendants occupied as tenants; (2) the Corps should have approved the after-the-fact permit application because it was in the public interest that the structures be built; (3) that same public interest meant the plaintiff United States lacked standing to sue; and (4) the cease and desist order was invalid because it was not signed by the correct person. Defendants also argued that even if summary judgment was not entered for the defendants on their cross-motion for these reasons, then at least summary judgment should be denied to the United States, because there were material facts in dispute. Essentially, the same arguments are raised on appeal.

A.  Puerto Rico as an Indispensable Party

The question of whether Puerto Rico is an indispensable party is governed by Rule 19, Fed. R. Civ. P. This is a two part inquiry.

-8-

First, the party must be a necessary party under Rule 19(a),[1] <u>Delgado</u>

v. <u>Plaza Las Americas, Inc.</u>, 139 F.3d 1, 3 n.2 (1st Cir. 1998), and

then it must be an indispensable party under Rule 19(b).[2]  For a number

of reasons, we agree with the district court that Puerto Rico, through

---

[1]     Rule 19(a) provides:
(a)  Persons to be Joined if Feasible.  A person who is subject
to service of process and whose joinder will not deprive the court
of jurisdiction over the subject matter of the action shall be
joined as a party in the action if (1) in the person's absence
complete relief cannot be accorded among those already parties,
or (2) the person claims an interest relating to the subject of
the action and is so situated that the disposition of the action
in the person's absence may (i) as a practical matter impair or
impede the person's ability to protect that interest or (ii) leave
any of the persons already parties subject to a substantial risk
of  incurring  double,  multiple,  or  otherwise  inconsistent
obligations by reason of the claimed interest.  If the person has
not been so joined, the court shall order that the person be made
a party.  If the person should join as a plaintiff but refuses to
do so, the person may be made a defendant, or, in a proper case,
an involuntary plaintiff.  If the joined party objects to venue
and joinder of that party would render the venue of the action
improper, that party shall be dismissed from the action.

[2]     Rule 19(b) provides:
(b)  Determination by Court Whenever Joinder not Feasible.  If a
person as described in subdivision (a)(1)-(2) hereof cannot be
made a party, the court shall determine whether in equity and good
conscience the action should proceed among the parties before it,
or should be dismissed, the absent person being thus regarded as
indispensable.  The factors to be considered by the court include:
first, to what extent a judgment rendered in the person's absence
might be prejudicial to the person or those already parties;
second, the extent to which, by protective provisions in the
judgment, by the shaping of relief, or other measures, the
prejudice can be lessened or avoided; third, whether a judgment
rendered in the person's absence will be adequate; fourth, whether
the plaintiff will have an adequate remedy if the action is
dismissed for nonjoinder.

PRIDCO, is not a necessary party under Rule 19(a), and so not an indispensable party under Rule 19(b).

Defendants argue under Rule 19(a) that the Commonwealth of Puerto Rico has interests such that its absence from the action "may . . . as a practical matter impair or impede the person's ability to express that interest." Fed. R. Civ. P. 19(a). It also argues under Rule 19(b) that the United States cannot have a complete remedy unless the Commonwealth is a party. Defendants make the usual Rule 19(b) argument that the absence of an indispensable party means the action should be dismissed.

Defendants say that they are mere lessors, and the Commonwealth is the ultimate owner of the offending structures and so it must be made a party. This position is contrary to the admission in the defendants' answer that the Marina is the "sole owner" of all of the property in question, and with its position that the Commonwealth has only a "vested" interest in the so-called improvements. We bypass this inconsistency in defendants' position.

The PRIDCO lease with the Marina, in the same clause which permits PRIDCO to take improvements at the end of the lease, makes the lessee responsible for obtaining and complying with all applicable state and federal permits.[3] The requirement to get necessary permits

_____

[3] Clause Eight of the PRIDCO lease provides, in relevant part, that if PRIDCO authorizes the lessee to build

-10-

from the Corps is repeated in another clause.[4] PRIDCO is authorized to cancel the lease for non-compliance with these provisions.[5] PRIDCO has, by lease, assigned responsibility for the permitting process and its consequences to defendants.

Defendants raise a pure issue of law: whether an owner is a necessary party when a tenant makes "improvements" in property that are in violation of the Rivers and Harbor Act. At the outset, we are dubious that the Commonwealth is the present owner of the structures challenged by the Corps, given the lease conditions. The lease describes the premises leased and does not purport to give rights to build on the submerged lands next to the leased piers and premises. While the leases may grant a reversionary interest to the lessors in improvements on the leased property, the structures at issue here were not built on the leased property, but on submerged lands outside the leased property.

---

improvements, the "Lessee hereby commits itself to submit evidence of all those necessary permits," be they state or federal, required for the construction of the improvements.

[4] Clause Sixteen of the lease provides that "Lessee shall comply with the laws and/or rules, norms, regulations of all federal and/or state agencies applicable or governing, related to its operations and in particular . . . [the] U.S. Corps of Engineers . . .."

[5] Clause Fourteen of the lease allows PRIDCO to cancel the lease for "non-compliance" with any of the provisions or conditions of the lease.

Still, even if we assume that the Commonwealth will have some ownership interest in the illegally constructed structures at the end of the lease, that interest is insufficient to render it a "necessary party" under Rule 19(a). The order here does not as a practical matter impair or impede the Commonwealth's ability to protect its interest in the property it does indisputably own: the original piers and original structures. The only remaining issue raised by defendants is whether the court's order would "impede or impair" the Commonwealth's ability to protect its purported reversionary interest in the illegal structures upon the termination of the lease. However, a party is necessary under Rule 19(a) only if they claim a "legally protected interest" relating to the subject matter of the action. See, e.g., Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1043 (9th Cir. 1983). At present, this reversionary interest is wholly contingent -- if defendants opted to raze the structures on their own volition, the Commonwealth would have no legal recourse. That defendants do so under court order makes no difference. Since the relief ordered by the district court is complete, and concludes the controversy without harm to any legally cognizable interest of the Commonwealth, the Commonwealth is not a necessary party under Rule 19(a).[6]

---

[6] The defendant does not argue an alternative reason that the Commonwealth might be considered a necessary party, but we pause to consider it in light of the court's duty to protect the

We add that the Commonwealth, well aware of this situation, never moved to intervene, and so it is apparently of the view that its interests either were not at stake or were aligned with those of the United States. Cf. Fed. R. Civ. P. 19(a)(2) (compulsory joinder appropriate where the person "claims an interest" relating to the subject of the action that is threatened by litigation in his absence) (emphasis added). Since its decision to forgo intervention indicates that the Commonwealth does not deem its own interests substantially threatened by the litigation, the court should not second-guess this

---

interests of absent parties. See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968) (urging courts of appeal to raise nonjoinder issues on their own initiative "to protect the absent party, who of course had no opportunity to plead and prove his interest below"). The Commonwealth might have an interest relating to the subject matter of this action because at some future point, the Corps could possibly seek to compel the Commonwealth to remove the offending structures, should the order stand but the defendants fail to comply with its dictates. We conclude that this hypothetical possibility is insufficient to render the Commonwealth a necessary party to this action. The absence of the Commonwealth in this action would not impair or impede its ability to protect its interests. See Fed. R. Civ. P. 19(a)(2)(i). Nor would it threaten to leave the present defendants at risk of incurring multiple or inconsistent obligations. Cf. Rule 19(a)(2)(ii). In any subsequent action against the Commonwealth, it would be free to assert all of its possible defenses, without being impaired by the outcome of the present case. In these circumstances, and in light of the Commonwealth's decision not to intervene, we do not find the Commonwealth to be a necessary party.

determination, at least absent special circumstances.  See, e.g.,

Northrop Corp., 705 F.2d at 1044; United States v. Sabine Shell, Inc.,

674 F.2d 480, 483 (5th Cir. 1982).  Thus the requirements of Rule 19(a)

have not been met.

Even if the Rule 19(b) analysis were reached, the

Commonwealth, through PRIDCO, would not be an indispensable party.  See

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118-

25 (1968) (finding that the mere fact that absent parties' interests

may be affected does not automatically render that party indispensable

within the meaning of Rule 19(b)).  At present, there is no reason to

think that any judgment against defendants would prove to be

inadequate.  Further, even were the Commonwealth a necessary party and

an indispensable party, as it is not, the Commonwealth could just be

joined in the action,[7] and so there would be no reason to dismiss for

lack of an indispensable party.[8]

---

[7]     The district court misspoke when it gave as a reason for
finding Puerto Rico was not a necessary party that the Commonwealth
could not be sued in federal court by the United States.  That is not
so.  See, e.g., United States v. Alaska, 503 U.S. 569 (1992) (holding
state responsible under Rivers and Harbors Act); United States v.
Mississippi, 380 U.S. 128, 140-41 (1965).

[8]     On appeal, defendants have moved to supplement the record and
to remand to the district court, flourishing a letter purportedly from
a Deputy Executive Director of the Puerto Rico Industrial Development
Company.  That letter asserts that this agency has an interest in
keeping two of the offending structures.  We order the letter be
stricken and deny the motion.  Even assuming dubitante that this letter
is an authorized expression of interest on the part of the Commonwealth
in the retention of structures erected in violation of both federal and

-14-

B.   The Public Interest Standard

Defendants make a two-pronged argument regarding public interest, as best we understand it.  The first is that it is in the public interest that the permits be issued, and the second is that, because this is so, the United States does not have standing to pursue this enforcement action.

The most benign thing that can be said for these arguments is that they are inventive.  First, at the time, defendants did not seek review of the denial of the permits under the Adminstrative Procedure Act, 5 U.S.C. § 701 et seq., the proper avenue for such a "public interest" challenge to an agency action.  They are foreclosed from collaterally attacking the denial of the permits in this enforcement proceeding.  Moreover, under the APA, such agency judgements would be entitled to considerable deference, and the court shall not substitute its judgment for that of the agency.  See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105

_____

Puerto Rico law, that expression of interest is too little, too late. Throughout the district court proceedings, the Commonwealth of Puerto Rico, which clearly knew of the dispute, never sought to intervene. Courts do not initially decide permit applications and this belated effort to introduce evidence is improper.  See In re Colonial Mortgage Bankers Corp., 186 F.3d 46, 50 (1st Cir. 1999) (new evidence proffered that was not properly before the trier of fact cannot be considered on appeal), cert. denied, 528 U.S. 1139 (2000).

(1977)); <u>Trafalgar Capital Assocs., Inc.</u> v. <u>Cuomo</u>, 159 F.3d 21, 26 (1st Cir. 1998), <u>cert. denied</u>, 527 U.S. 1035 (1999).

There would be no significant reason to question the agency's judgment here in any case. The Corps is charged with the protection of the "navigable capacity" of U.S. waters, such as the San Antonio Channel of the San Juan Bay, and must consider a wide array of interests in the protection of these environmental resources. The denial of the initial permits applied for was based on the Commonwealth's refusal to grant coastal zone management certification; accordingly, the position of the United States can hardly be said to be against the public interest. In addition, the law requires the denial of the after-the-fact attempts to get permission for structures as to which permits were denied or as to which legal action has been determined to be appropriate. 33 C.F.R. § 326.3(e); <u>see also</u> <u>Cumberland Farms</u>, 826 F.2d at 1163 (Corps acted well within its authority under 33 C.F.R. § 326.4(c)(4) in denying after-the-fact application). As to the structures built without even an application for a permit, whatever the merits of a hypothetical application that was never made, it is contrary to the public interest to permit the building of structures in navigable waters without any permit application having been submitted.

Finally, the lack of standing argument is incomprehensible. Congress charged the Corps with considering permit applications from

-16-

those wanting to put structures into navigable waters. Defendants here either were denied permits or did not bother to apply for them. The United States plainly has standing under the statute to enforce cease and desist orders and to seek the removal of structures built in violation of law. See 33 U.S.C. § 406; Cumberland Farms, 826 F.2d at 1163.

C.  Summary Judgment:  Material Facts

The Marina argues that there are material facts in dispute that preclude entry of summary judgment. In particular it says that there are disputes of fact as to the measurements of the structures at issue. It also argues that "there are genuine controversies regarding the permit application process . . . that some or all of the structures did not require the issuance of individual permits and/or were authorized by plaintiff." We disagree. The record is quite clear that defendants willfully violated the law. Further, these sort of overbroad arguments, unsupported by specifics, amount to a waiver of the issue.  Finally, defendants say they would like to do some discovery which might lead to admissible evidence. But no Rule 56(f) affidavit was filed, perhaps because it could not have been filed in good faith, and so defendants are foreclosed.

D.  Improper Signature

The final argument is that the cease and desist order may not be enforced because the wrong person signed the orders. The initial

cease and desist order was signed by a Mr. Muñiz for the District Engineer. This order was later amended by a second order, which was signed by the Deputy District Engineer of the Corps. The defendants contest Mr. Muñiz's authority to sign the order, relying on the language of 33 C.F.R. § 326.3(c), which provides:

> Once the district engineer has determined that a violation exists, he should take appropriate steps to notify the responsible parties . . . . [T]he district engineer's notification should be in the form of a cease and desist order prohibiting any further work pending resolution of the violation . . ..

The argument is utterly meritless. As the district court noted, the District Engineer is authorized to delegate his authority. See 33 CFR § 325.8(b) ("permit need not be signed by the district engineer in person but may be signed for and in behalf of him by whomever he designates"). Upon its review of the record, the district court found that Mr. Muñiz, as Chief of the Regulatory Field Office, was properly authorized by established Corps policies to sign cease and desist orders. If so, the authority was properly delegated. We see no reason to disturb this finding.

### III.

For these reasons we affirm the district court's entry of summary judgment for the United States, and its order of enforcement.[9]

---

[9] The judgment ordered "the defendants to expeditiously and without further delay remove all referenced structures mentioned in all six claims." Specifically, the judgment orders require removal of:
1. a contingently authorized 40 by 80 foot platform which was

-18-

In light of the frivolous arguments raised on appeal, we award double

costs against defendants.[10]

_____

actually built to dimensions of 97 by 57 feet in violation of
Permit No. 199250101;
2. that portion of the pier reconstruction of Nationwide Permit
#3 which exceeds the original dimensions;
3. the platform, with a minimum size of 2,800 square feet built
without the Corps permit after issuance of the Cease and Desist
Order;
4. the 300 by 5 foot pier constructed without a permit and
restore the navigable waters of the United States to their pre-
construction condition; removing all material, wood, concrete,
plastic or construction-related debris in a sound and
environmentally correct manner, said materials to be deposited in
an upland site previously approved by the Corps.

It also permanently enjoined the defendants "from further construction
in navigable waters of the United States without first having obtained
permits from the Corps and after complying with all conditions imposed
by said permits."

[10] For assessment of double costs in cases raising
frivolous arguments, see Hawkins v. Rhode Island Lottery Comm'n,
Nos. 00-1398; 00-1660, ___ F.3d ___, slip op. at 3 (1st Cir.
Jan. 31, 2001).